NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0493n.06

No. 23-3983

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Dec 05, 2024

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| ERIC V. BARTOLI, | ) | |
| Defendant-Appellant. | ) ) | OPINION |
| | ) | |

Before: BATCHELDER, GRIFFIN, and WHITE, Circuit Judges.

GRIFFIN, Circuit Judge.

The district court twice sentenced defendant Eric Bartoli to an above-Guidelines sentence of 20 years' imprisonment for fraud-related offenses, but both sentences were vacated for exceeding certain statutory maximums. On the third attempt, the district court again sentenced him to 20 years. Bartoli argues this sentence resulted from the government's breach of the plea agreement and that it is procedurally and substantively unreasonable. We disagree and affirm.

I.

From 1995 to 1999, Bartoli conned hundreds of people into investing in his unregistered mutual fund, causing tens of millions of dollars in losses. *United States v. Bartoli*, 728 F. App'x 424, 425–26 (6th Cir. 2018) (*Bartoli I*). A grand jury later indicted him on various charges, including securities, mail, and wire fraud. Bartoli long evaded justice, but authorities eventually

arrested him in Peru in December 2013 and extradited him to the United States in October 2015. In July 2016, Bartoli pleaded guilty pursuant to a plea agreement.

Under the plea agreement, the parties agreed to recommend a sentence within the advisory Sentencing Guidelines range, which the probation office's presentence investigation report (PSR) calculated to be 87 to 108 months' imprisonment. But both the plea agreement and the PSR erroneously cited new (and higher) statutory maximums for the fraud counts instead of those in effect when Bartoli committed his offenses. At the time of his offenses, securities fraud carried a maximum sentence of 10 years, 15 U.S.C. § 78ff(a) (1988), and mail and wire fraud carried five-year maximums, 18 U.S.C. §§ 1341, 1343 (1994). But in 2002, Congress increased each crime's maximum to 20 years. Sarbanes-Oxley Act of 2002, Pub. L. No. 107–204, Title IX, § 903, Title XI, § 1106, 116 Stat. 745 (2002). The former statutory penalties, not the latter, should have applied to Bartoli's offenses. *United States v. Bartoli*, 2023 WL 5206446, at *1 (6th Cir. Aug. 14, 2023) (*Bartoli II*).

Neither the parties, nor the district court, nor the probation office noticed the error with the maximum sentences during Bartoli's original sentencing in 2016. The district court adopted the PSR's Guidelines range of 87 to 108 months but "varied up substantially" to impose a sentence of 20 years' imprisonment. Applying incorrect maximums, the district court sentenced Bartoli to 20-year terms on the fraud counts and 5-year terms on the remaining counts, all to run concurrently. On direct review, with the error still unnoticed, we affirmed. *Bartoli I*, 728 F. App'x at 432.

Bartoli eventually discovered the statutory-maximum issue and successfully moved to vacate his sentence. In 2021, the district court held a resentencing hearing, at which it adopted a higher Guidelines range of 121 to 151 months, no longer crediting Bartoli for acceptance of responsibility, and again varied upward to impose a sentence of 20 years. But the district court

again exceeded applicable statutory maximums—imposing consecutive 10-year sentences on the mail and wire fraud counts, concurrent to five-year sentences on all other counts. And because it did so, we vacated that sentence and remanded for plenary resentencing. *Bartoli II*, 2023 WL 5206446, at *6–7 (6th Cir. 2023).

Once again, the parties submitted sentencing memoranda, and the district court held another resentencing hearing in 2023. It again adopted a Guidelines range of 121 to 151 months and varied upward for a third time to impose a sentence of 20 years. This time, the district court applied the correct maximums and imposed a sentence of 10 years for securities fraud, consecutive to five years for wire fraud, consecutive to five years for all other counts.

This appeal followed.

## II.

We begin with Bartoli's contention that his sentence resulted from the government's breach of the plea agreement. Because he failed to object on this ground below, he can obtain relief on appeal only if we find plain error. Fed. R. Crim. P. 52(b); *Puckett v. United States*, 556 U.S. 129, 136–43 (2009). For us to find plain error, Bartoli must show "(1) error (2) that was obvious or clear, (3) that affected [his] substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (internal quotation marks omitted).

Under the plea agreement, the government promised to recommend a sentence within the Guidelines range and not to "recommend *or suggest in any way* that a departure or variance is appropriate." (Emphasis Added). The government ultimately recommended that the district court "resentence Bartoli to a sentence of imprisonment within the advisory Guidelines range," but Bartoli argues the government broke its promise not to "suggest [a variance] in any way" because

of a line in its sentencing memorandum. The government's memorandum advised the district court that it "could properly accomplish" its previously imposed, above-Guidelines, 20-year sentence "by imposing consecutive 5-year sentences for [the wire and mail fraud counts], and then run[ning] them consecutive to the 10-year sentence for [the securities fraud count] . . . or to some other combination of Bartoli's sentences for his other convictions."

Bartoli has a point. A promise not to "suggest [an upward variance] in any way" is a promise not to "mention a variance as something to think over, bring a variance to the mind for consideration, propose or mention a variance as a possibility, or put a variance forward by implication." *United States v. Warren*, 8 F.4th 444, 448–49 (6th Cir. 2021) (brackets and internal quotation marks omitted). The government's sentencing memorandum breaks that promise by explaining—i.e., suggesting—how the district court could "properly accomplish" an above-Guidelines sentence. *See id.* (holding that the government breached plea agreement).

Even so, defendant must demonstrate prejudice to satisfy the third prong of the plain-error inquiry. *Puckett*, 556 U.S. at 140–41. To demonstrate prejudice, Bartoli must make a "specific showing" that his sentence would be shorter but for the government's breach, *United States v. Olano*, 507 U.S. 725, 735 (1993), or at least establish a "reasonable probability" of a more lenient sentence, *United States v. Marcus*, 560 U.S. 258, 262 (2010). This he cannot do.

The record demonstrates that the district court would have imposed a 20-year sentence without the government's suggestion because it did so twice before. At the 2016 sentencing, the district court varied upward from the applicable Guidelines range to impose a total sentence of 20 years through (erroneous) 20-year concurrent sentences on the fraud counts. At the 2021 resentencing, the district court again varied upward to impose a total sentence of 20 years through (still erroneous) 10-year consecutive sentences on the wire and mail fraud counts. And at the 2023

resentencing, the district court again imposed a 20-year sentence. To do so, it used the same methodology it used for the 2021 resentencing—running certain sentencing "terms consecutively, instead of concurrently, to again reach 240 months," *Bartoli II*, 2023 WL 5206446, at *3—but this time within the correct statutory maximums. Thus, the district court knew, without the government's suggestion, that it could run sentences on separate counts consecutively to reach a total sentence of 20 years and exercised its discretion to do so.

Bartoli argues the government's suggestion swayed the district court because it ultimately imposed "the *exact sentence* the government suggested." But again, the government did not tell the district court anything new—the district court had already done essentially the same thing when it used consecutive sentences at the 2021 resentencing. No record evidence suggests that the district court would have been more lenient had the government omitted the "properly accomplished" explanation from its 2023 sentencing memorandum.

If this reasoning sounds familiar to the parties, it should. Bartoli made a similar breach-of-plea-agreement argument during his first appeal, alleging the government suggested an above-Guidelines sentence at the first sentencing by "mention[ing] the Guidelines only in passing" and stating that it "sought a 'significant sentence.'" *Bartoli I*, 728 F. App'x at 426. But there, as here, Bartoli failed to preserve the argument, so we reviewed for plain error. *Id.* And we found no prejudice because there, as here, Bartoli "fail[ed] to explain how a lower sentence was reasonably probable, not simply possible." *Id.* at 426–27.

And contrary to defendant's assertion that the government should have more forcefully advocated for a within-Guidelines sentence, the plea agreement mandated only that the government recommend a within-Guidelines sentence and not "suggest" an above-Guidelines one. We find unpersuasive Bartoli's citation to *United States v. Cortés-López*, 101 F.4th 120, 132–34

(1st Cir. 2024), for the proposition that the government must "vocalize" reasons supporting a bargained-for sentence. In *Cortés-López*, the plea agreement's bargained-for sentence (24 months' probation) was far below any applicable Guidelines ranges (which called for at least 27 months' imprisonment), so the First Circuit held that the government had to provide some "explanation for the disparity" between the two. *Id.* at 124, 125 n.2, 134. No such disparity existed here—the bargained-for sentence and the Guidelines-recommended one were the same. Accordingly, the plea agreement imposed no extra "duty to actively advocate for the agreed-upon sentence." *Id.* at 132.

For these reasons, Bartoli fails to show any plain error related to a plea-agreement breach.

III.

Defendant next challenges the procedural and substantive reasonableness of his sentence. We review for both types of reasonableness "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41, 46 (2007).

A.

We first address procedural reasonableness. For a sentence to be procedurally reasonable, the district court "must properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence." *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018).

Bartoli makes two arguments why the sentence is procedurally unreasonable: (1) the district court failed to adequately explain why it imposed consecutive sentences; and (2) the district court relied on an impermissible factor, namely, its desire to reimpose the previous 20-year sentence. Both arguments fail.

1.

District courts have discretion to impose consecutive terms of imprisonment, and when doing so, they must consider "the factors set forth in section 3553(a)." 18 U.S.C. § 3584(b); *see also United States v. Morris*, 71 F.4th 475, 483 (6th Cir. 2023). But a district court need not separately analyze the § 3553(a) factors for "the concurrent or consecutive nature of the sentence" and for the total sentence length. *United States v. Berry*, 565 F.3d 332, 343 (6th Cir. 2009). Rather, a district court may "intertwine[]" those determinations in a single discussion of the factors. *United States v. King*, 914 F.3d 1021, 1026 (6th Cir. 2019). And in a resentencing case like this one, we may consider the district court's discussion at the latest resentencing "in conjunction with" the earlier sentencings to determine "whether the district court adequately explained its reasoning." *See United States v. Robinson*, 503 F.3d 522, 530 n.2 (6th Cir. 2007).

The record confirms that the district court adequately explained why the § 3553(a) factors warranted the imposition of consecutive sentences to reach a 20-year aggregate sentence. Indeed, the district court "ma[d]e clear that its reasons for choosing a substantive sentence and for running [the] sentences consecutively [were] the same." *United States v. Cochrane*, 702 F.3d 334, 346 (6th Cir. 2012). Its explanation is particularly reasonable in light of this case's procedural history, in which we previously held that the original 20-year sentence was substantively reasonable, *Bartoli I*, 728 F. App'x at 429–31, and observed that the district court viewed the sentences on the various counts "as an aggregate 'bundle' to reach a specific outcome, regardless of the exact bundle formulation," *Bartoli II*, 2023 WL 5206446, at *7.

Start with "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). At the original sentencing hearing, the district court stated that it received and reviewed "more than 70" victim-impact statements for this case. It then noted:

> I have rarely in all 18 years on the bench seen anyone who's created so much harm to so many people, unsophisticated investors who were drawn in to this scam and scheme, many ways by you, and they're all retirees, many of them elderly people who had no way, shape or form the ability to protect themselves from this scheme.

At the latest resentencing hearing, the district court re-explained that Bartoli "defrauded and attempted to defraud investors located in the United States, Latin America and elsewhere by means of selling unregistered securities" and that his scheme caused "more than $30 million" in total losses to "between 500 and 600 identified victims." It recalled the "staggering" amount of harm Bartoli caused—both economic and psychological harm from the destruction of his victims' life savings. And it reiterated its belief that "the extraordinary harm to so many people" justified "an extraordinary upward variance."

For "the history and characteristics of the defendant," *id.*, the district court considered Bartoli's age (68 years old), "health problems," and lack of other criminal history. But it also noted that Bartoli "was, in essence, a fugitive from justice [for] more than ten years in the country of Peru," and that, while there, he committed "other scams and schemes" until he was finally arrested and extradited to the United States.

As for "the need for the sentence imposed," *id.* § 3553(a)(2), the district court—having twice previously explained why punishment, deterrence, protection of the public, and rehabilitation warranted a 20-year term of imprisonment—stated that "nothing has changed" between the first two sentencings and the latest one that would cause it to think differently about this factor. Indeed, the court observed Bartoli's continued lack of sympathy for his victims or remorse for his actions, a theme that pervaded all three sentencing hearings—even after Bartoli had spent nearly a decade in prison for his crimes.

Bartoli argues these explanations were insufficient because if, as the district court said, nothing had changed since the original sentencing hearing, "then there would have been no reason

under § 3553(a) to change the way Bartoli's sentences ran" from concurrent to consecutive. But the same could easily be said about the sentence length: Because nothing had changed, there was no reason to diverge from a 20-year sentence. The district court originally determined that the appropriate aggregate sentence for Bartoli's counts of conviction was 20 years' imprisonment, and at the latest sentencing, it made clear that the § 3553(a) factors continued to favor that sentence length. It properly ran the terms on each count consecutively to reach that appropriate total sentence.

Thus, the district court adequately explained its decision to impose consecutive sentences.

2.

Relatedly, Bartoli argues the district court considered an "impermissible factor"; namely, its desire "to reimpose the previously vacated sentence." He contends that, at the 2016 sentencing hearing, the district court "imposed the 'harshest sentence' it could using the highest statutory maximum [it] thought was available"—the mistaken statutory maximum of 20 years on the fraud counts. Since then, Bartoli argues, the district court has unfairly tried to "reverse engineer" the original 20-year sentence by running lower maximum sentences consecutively.

True, the district court apparently considered its previous sentence in rendering the current one. At the 2023 resentencing hearing, the district court stated that 20 years was the sentence it "previously imposed" and the one that "still remains appropriate." Although "[w]e have not adopted a comprehensive definition of what constitutes an 'impermissible factor,'" generally, "we have found reversible error where a district judge relies on a factor that is neither enumerated in nor consistent with the Sentencing Guidelines or 18 U.S.C. § 3553(a)." *United States v. Cabrera*, 811 F.3d 801, 808 (6th Cir. 2016).

But nothing suggests that the district court's consideration of its prior sentence was inconsistent with § 3553(a). To the contrary, as just discussed, the district court appropriately based its 20-year sentence on adequate consideration of the § 3553(a) factors. Bartoli tries to compare his case to *Morris*, 71 F.4th at 478, where we reversed a district court's imposition of the same sentence on resentencing through consecutive sentences. But there, the district court gave no explanation for consecutive sentencing (except for its desire to impose the same sentence), insufficiently analyzed the § 3553(a) factors, and imposed an above-Guidelines sentence where the range was lower on remand than at the original sentencing. *Id.* at 482–83. Here, by contrast, the Guidelines range did not decrease from the original sentencing, and the district court adequately analyzed the § 3553(a) factors and explained why those factors justified its decision to impose consecutive sentences and maintain the sentence length.

Analyzing the same factors and concluding that the same sentence continues to be appropriate is consistent with § 3553(a); thus, the district court neither considered an impermissible factor nor abused its discretion. *See Cabrera*, 811 F.3d at 808.

B.

Finally, Bartoli argues his 20-year sentence is substantively unreasonable because it creates an unwarranted sentencing disparity. Under § 3553(a)(6), district courts must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6); *see also United States v. Mitchell*, 681 F.3d 867, 883 (6th Cir. 2012).

At the 2023 resentencing hearing, the district court recognized that its sentence would cause disparities, and it explained why its sentence was nonetheless appropriate:

> [T]here will be sentencing disparities here, given the nature of this case, given the
> extraordinary amount of victims, given the extraordinary amount of loss, not both

-10-

economic, but the extraordinary harm done to the victims of the case, literally destroyed many of their lives, destroyed their lives economically, destroyed their lives mentally, took away the security they once felt they had through their years of savings.

Bartoli argues these justifications are insufficient because his sentence is an "outlier" when compared to "sentences given for similar crimes." For support, he cites several fraud cases with "hundreds of millions of dollars" in losses where the defendants were sentenced to less time than what Bartoli received, even though Bartoli's case involved—in his words—"only tens of millions of dollars" in losses. *See, e.g.*, *United States v. Parris*, 573 F. Supp. 2d 744, 751–53, 756–62 (E.D.N.Y. 2008) (collecting cases). And he cites another example in which a fraud defendant, who lost at trial and was responsible for a loss seven times greater than Bartoli's, was sentenced to about half as much prison time as Bartoli. *See* Lucian E. Dervan, *Sentencing the Wolf of Wall Street: From Leniency to Uncertainty*, 61 Wayne L. Rev. 91, 100 (2015).

Yet, as we previously explained in response to Bartoli's nearly identical disparity argument in his first appeal, Bartoli's focus on his guilty plea and total loss amount "ignores the other reasons for the variance: the number of victims, the harm that Bartoli's conduct caused, his flight, and his conduct in Peru." *Bartoli I*, 728 F. App'x at 431. Here, he baldly asserts that these other reasons no longer justify the disparity, despite his sentencing errors being rooted in inapplicable statutory maximums rather than substantive reasonableness. He claims that the PSR already considered "these facts when deciding Bartoli's Guidelines range," so these facts cannot "justify a double-Guidelines range variation." But that logic treats the Guidelines as mandatory, which they emphatically are not. *United States v. Booker*, 543 U.S. 220, 263–65 (2005). The district court has the duty and the discretion to independently weigh the facts and "impose a sentence sufficient, but not greater than necessary" under § 3553(a). It did so here. Given the extraordinary harm

Bartoli caused, his long evasion of justice, and his continued lack of remorse, the district court did not abuse its discretion by imposing an above-Guidelines, 20-year sentence.

IV.

For these reasons, we affirm the district court's judgment.